IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| **KEITH KRIKSTAN**<br>**Maryland Correctional Institution-Hagerstown**<br>**18601 Roxbury Road**<br>**Hagerstown, Maryland 21746**<br><br>                    **Plaintiff**<br><br>v.<br><br>**STATE OF MARYLAND**<br><br><u>Serve On:</u> **Hon. Dereck E. Davis, Treasurer**<br>             **Goldstein Treasury Building**<br>             **80 Calvert Street**<br>             **Annapolis, MD 21401**<br><br>**AND**<br><br>**KATHLEEN GREEN,**<br>**Individually and in her capacity as**<br>**Warden of**<br>**Eastern Correctional Institution and**<br>**Employee of the Department of Public**<br>**Safety and Correctional Services**<br>**30420 Revells Neck Road**<br>**Westover, Maryland 21890**<br><br>**AND**<br><br>**SAMUEL WARREN,**<br>**Individually and in his capacity as a**<br>**correctional officer with the**<br>**Eastern Correctional Institution**<br>**30420 Revells Neck Road**<br>**Westover, Maryland 21890**<br><br>**AND**<br><br>**DAVID QUILLEN,**<br>**Individually and in his capacity as a**<br>**correctional officer with the**<br>**Eastern Correctional Institution** | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | <br><br><br><br><br><br><br><br><br><br><br><br><br>CASE NO.: _____ |

1

████████████████ *
                 *
                 *
**AND**          *
                 *
**ANANIAS WILSON** *
Individually and in his capacity as a *
correctional officer with the *
**Eastern Correctional Institution** *
████████████████ *
████████████     *
                 *
**AND**          *
                 *
**NEIL DAUBACH** *
Individually and in his capacity as a *
correctional officer with the *
**Eastern Correctional Institution** *
████████████     *
████████████     *
                 *
**AND**          *
                 *
**SERGEANT "J.S."** *
Individually and in his capacity as a sergeant *
with the Eastern Correctional Institution *
30420 Revells Neck Road *
Westover, Maryland 21890 *
                 *
         **Defendants** *
                 *
                 *
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, **Keith Krikstan** (hereinafter referred to as **"Plaintiff"**), by and through his attorneys, Paul Turkheimer, Esquire, Joseph Chazen, Esquire, Adam I. Shareef, Esquire, Samuel T. Wolf, Esquire and Meyers, Rodbell & Rosenbaum, who hereby sues Defendants, **The State of Maryland** (hereinafter referred to as **"The State"**), **Warden Kathleen Green** (hereinafter referred to as **"Warden Green"**) and Correctional Officers, **Samuel Warren**,

2

(hereinafter, referred to as "**CO Warren**"), **David Quillen** (hereinafter referred to as "**CO Quillen**"), **Ananias Wilson** (hereinafter referred to as "**CO Wilson**") and **Neil Daubach** (hereinafter referred to as "**CO Daubach**"), and **Sergeant J.S.** (collectively referred to as "Defendants") and in support thereof, Plaintiff states the following:

## INTRODUCTION

1. On July 12, 2021, Plaintiff Keith Krikstan—then an inmate at Eastern Correctional Institution—was beaten by a correctional officer while Plaintiff was defenseless and posed no threat to anyone. While two other officers watched, Defendant CO Warren beat Plaintiff while Plaintiff's hands were cuffed behind his back. In an attempt to cover up their misconduct, the Defendants conspired to destroy video evidence of the aftermath of the beating. Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate his Eighth Amendment right to be free from cruel and unusual punishment. He seeks to vindicate the same right under Articles 16 and 25 of the Maryland Declaration of Rights and asserts other state-law claims for relief.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper under 28 U.S.C. §1391(b). The events giving rise to this complaint occurred in this judicial district and division.

## THE PARTIES

4. Plaintiff, Keith Krikstan, at all times relevant to the facts pertaining to this case was an inmate at Eastern Correctional Facility located at 30420 Revells Neck Road Westover, Maryland 21890

5. Defendant, State of Maryland, at all times relevant to facts pertaining to this case, exercised control over and influenced the policies, practices and customs of the correctional

3

officers, as well as the training, supervision, control and discipline of correctional officers. State of Maryland is and was the employer of the Defendant correctional officers named herein. In addition, State of Maryland has acted or fails to act through its policy-making officials, including, but not limited to, the warden and other high-ranking officials at the Eastern Correctional Institution and/or Maryland Department of Public Safety and Correctional Services; the acts and edicts of these policy making officials constitute the policies, practices and customs of the State of Maryland.

6. Defendant, Kathleen Green Individually and/or as Agent, Servant and/or Employee of the State of Maryland, was the Warden of Eastern Correctional Institution and was an employee of the Maryland Department of Public Safety and Correctional Services, and at all times herein was acting individually and in her official capacity as the agent, servant and employee of the State of Maryland and/or the Maryland Department of Public Safety and Correctional Services. She is sued individually and in her official capacity.

7. At all times relevant herein, CO Warren, Individually, and/or as Agent, Servant and/or Employee of the State of Maryland, was a corrections officer and a sworn member of the Maryland Department of Public Safety and Correctional Services, and at all times herein was acting individually and in his official capacity as the agent, servant and employee of the State of Maryland and/or the Maryland Department of Public Safety and Correctional Services. He is sued individually and in his official capacity.

8. At all times relevant herein, CO Quillen, Individually, and/or as Agent, Servant and/or Employee of the State of Maryland, was a corrections officer and a sworn member of the Maryland Department of Public Safety and Correctional Services, and at all times herein was acting individually and in his official capacity as the agent, servant and employee of the State of

Maryland and/or the Maryland Department of Public Safety and Correctional Services. He is sued individually and in his official capacity.

9. At all times relevant herein, CO Wilson, Individually, and/or as Agent, Servant and/or Employee of the State of Maryland, was a corrections officer and a sworn member of the Maryland Department of Public Safety and Correctional Services, and at all times herein was acting individually and in his official capacity as the agent, servant and employee of the State of Maryland and/or the Maryland Department of Public Safety and Correctional Services. He is sued individually and in his official capacity.

10. At all times relevant herein, CO Daubach, Individually, and/or as Agent, Servant and/or Employee of the State of Maryland, was a corrections officer and a sworn member of the Maryland Department of Public Safety and Correctional Services, and at all times herein was acting individually and in his official capacity as the agent, servant and employee of the State of Maryland and/or the Maryland Department of Public Safety and Correctional Services. He is sued individually and in his official capacity.

11. At all times relevant herein, Sergeant J.S., Individually, and/or as Agent, Servant, and/or Employee of the State of Maryland, was a sergeant employed by the Maryland Department of Public Safety and Correctional Services, and at all times was acting individually in his official capacity as the agent, servant, and employee of the State of Maryland and/or the Maryalnd Department of Public Safety and Correctional Services. He is sued individually and in his official capacity. At this time Sergeant J.S.'s full name is not known to the Plaintiff.

12. Pursuant to Md. State Government Code Ann. §12-106 et seq. (the "Maryland Tort Claims Act") the State of Maryland was properly put on notice of Plaintiff's claims.

## STATEMENT OF FACTS

13. On July 12, 2021, Correctional Officers Warren, Quillen, Wilson, and Daubach were working at the Eastern Correctional Institution (hereinafter referred to as "ECI"). On this date all were assigned to ECI Housing Unit 4.

14. In the late afternoon of July 12, 2021, Plaintiff reported to Unit 4 to begin his shift as an Inmate Observation Aide. Plaintiff was assigned this position due to his excellent disciplinary record.

15. As Plaintiff entered the housing unit he was frisked at the unit's entrance. During this initial frisk, CO Warren became frustrated with Plaintiff as he was not properly wearing his face mask as required by the existing COVID-19 pandemic restrictions. Nonetheless, Plaintiff was permitted onto the tier to begin his shift.

16. During the initial moments of his shift Plaintiff remarked that he had a strange interaction with CO Warren. This comment further irritated CO Warren and ultimately, he decided to retaliate against Plaintiff.

17. To accomplish this goal CO Warren forced Plaintiff to undergo a second more intrusive strip search. This second search was neither precipitated by any actions of the Plaintiff, nor was it otherwise normally conducted. To that end, CO Warren instructed Plaintiff to walk into the property room. Plaintiff complied with this instruction and entered the property room without handcuffs.

18. CO Warren followed Plaintiff into the property room and the pair were joined by CO Wilson and CO Daubach. Once inside the property room Plaintiff proceeded to the rear of the room where further instructions were posted.

19. Once inside the property room, Plaintiff began to read the strip search instructions aloud. While reading and complying with the instructions, Plaintiff made a coarse comment toward the officers. CO Warren then instructed Plaintiff to turn around and Plaintiff repeated his earlier remark. In response CO Warren stated to Plaintiff that he would no longer be permitted to serve as an Inmate Observation Aide.

20. Following this interaction, CO Warren informed Plaintiff that they would begin the monitored strip search procedure. This process purportedly required Plaintiff to be handcuffed and escorted to a cell where officers would disrobe him.

21. CO Warren handcuffed Plaintiff behind his back and with Plaintiff's shoes off and pants lowered, began escorting him to the entrance to the property room door. While proceeding toward the doorway, Plaintiff pulled away from CO Warren, breaking his grip on Plaintiff's arm.

22. Despite this motion, Plaintiff did not pose an actual threat and there was no justification to use force against him beyond resecuring the necessary grip on Plaintiff's arm.

23. Suddenly, and without warning, CO Warren threw Plaintiff to the floor and punched him five or six times in the face and head. Plaintiff was clearly handcuffed at the time and was lying on his side on the floor when the assault began. At no point before, during or after, did Plaintiff use any force that would have justified that which was used against him.

24. CO Wilson and CO Daubach observed the assault and did not intervene.

25. Following the beating, Officers completed the monitored strip search and escorted Plaintiff for medical evaluation. Immediately following the interaction, Plaintiff displayed visible signs of injury and bleeding.

26. Upon learning of the use of force incident, CO Quillen responded to the scene and began recording Plaintiff's medical evaluation as well the monitored strip search. During his

7

evaluation Plaintiff stated that he was assaulted by CO Warren. Plaintiff was fully compliant with search, weeping as it occurred. At the conclusion of the search, no contraband was found.

27. After filming CO Quillen returned to the unit's control center. Upon his return CO Quillen showed the video to CO Warren, the Sergeant on duty identified as "J.S.," CO Wilson, CO Daubach, and other various correctional officers. While viewing the video the Sergeant remarked that the video should be deleted based upon what it depicted. CO Warren agreed.

28. Over the next few hours various officers came together and ultimately determined that the use of force was not justified. As such the video became evidence of their perceived inappropriate actions. Accordingy, CO Quillen agreed with the plan and ultimately deleted the video from the camera.

29. Following the incident Defendants colluded, coordinated, and executed a plan to cover up the incident. Their efforts included submitting false written and verbal statements as well as the deletion of video footage. These acts were undertaken to prevent the discovery of what truly transpired on the date in question.

30. Following the incident CO's Warren, Quillen, Wilson and Daubach pled guilty to criminal charges arising from the aforementioned conduct.

### COUNT ONE – VIOLATION OF 42 U.S.C. § 1983 – VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS
(Use of Excessive Force)
Krikstan v. Warren

31. Plaintiff hereby alleges and incorporates by reference the facts and allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiff has a constitutional right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

33. The Eighth Amendment forbids correctional officers from using force against an inmate maliciously and sadistically to cause harm, without any good-faith basis to apply force to maintain or restore discipline.

34. CO Warren violated Plaintiff's right to be free from cruel and unusual punishment. CO Warren's use of force against a defenseless inmate whose hand were cuffed behind his back and whose pants were down was completely unnecessary and unreasonable.

35. CO Warren acted maliciously and sadistically to cause harm to Plaintiff.

36. CO Warren's conduct violated Plaintiff's rights under the Eighth Amendment as long and clearly established in cases such as *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Wilkins v. Gaddy*, 559 U.S. 34 (2010).

37. CO Warren's actions, as described herein, were unreasonable, willful and wanton in light of the facts and circumstances.

38. CO Warren subdued Plaintiff with more force than reasonably necessary and constitutionally permissible under the facts and circumstances.

39. As a result of CO Warren's conduct and actions, Plaintiff has suffered and will continue to suffer physical injuries as well as ongoing severe mental anguish.

40. At all times relevant herein, CO Warren was acting under the color of State and local law and as an officer of the Maryland Department of Public Safety and Correctional Services.

WHEREFORE, Plaintiff demands an order and judgment against Defendant CO Warren awarding damages for physical pain and suffering, emotional pain, mental anguish, inconvenience, attorney's fees, costs, loss of enjoyment of life, jointly and severally, against Defendants in the amount of five hundred thousand dollars ($1,000,000.00) in compensatory damages and one

million dollars ($3,000,000.00) in punitive damages, with interest and costs (including reasonable attorneys' fees under 42 U.S.C. § 1988).

### COUNT TWO – VIOLATION OF 42 U.S.C. § 1983— VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS
### (Supervisory Liability)
### Krikstan v. Warden Kathleen Green and Sergeant J.S.

41. Plaintiff hereby alleges and incorporates by reference the facts and allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42. At all relevant times, Warden Kathleen Green was the warden at Eastern Correctional Institution acting under color of State law. The scope of Warden Green's employment included the responsibility to exercise supervisory authority over all other individual Defendants.

43. At all relevant times, Sergeant J.S. was a sergeant at Eastern Correctional Institution acting under color of State law. The scope of Sergeant J.S.'s employment included the responsibility to exercise supervisory responsibility over the correctional officer Defendants, including CO Warren.

44. There is a longstanding, deeply rooted custom of officer misconduct at ECI. Warden Green and Sergeant J.S. were both subjectively aware of that custom of officer misconduct.

45. Both Warden Green and Sergeant J.S. were subjectively aware of facts concerning CO Warren's background, training, and past conduct as a correctional officer that showed he posed an unreasonable risk of harm to inmates such as Plaintiff.

46. Both Warden Green and Sergeant J.S. were deliberately indifferent to the risk that CO Warren posed to the safety of inmates such as Plaintiff. Despite their subjective knowledge of the risk CO Warren posed, Warden Green and Sergeant J.S. put CO Warren in a position to interact directly with inmates such as Plaintiff and failed to do anything to prevent CO Warren from assaulting Plaintiff.

47. As a result of Warden Green and Sergeant J.S.'s deliberate indifference to the risks posed by CO Warren, CO Warren was able to and did use excessive force in beating Plaintiff on July 12, 2021.

48. As a result of Warden Green and Sergeant J.S.'s conduct and actions, Plaintiff has suffered and will continue to suffer physical injuries as well as ongoing severe mental anguish.

WHEREFORE, Plaintiff demands an order and judgment against Defendant CO Warren awarding damages for physical pain and suffering, emotional pain, mental anguish, inconvenience, attorney's fees, costs, loss of enjoyment of life, jointly and severally, against Defendants in the amount of five hundred thousand dollars ($1,000,000.00) in compensatory damages and one million dollars ($3,000,000.00) in punitive damages, with interest and costs (including reasonable attorneys' fees under 42 U.S.C. § 1988).

### COUNT THREE – NEGLIGENT SUPERVISION AND RETENTION
**Krikstan v. The State of Maryland, Warden Kathleen Green, and Sergeant J.S.**

49. Plaintiff hereby alleges and incorporates by reference the facts and allegations contained in paragraphs 1 through 48 as if fully set forth herein.

50. At all times relevant to this complaint and contrary to acceptable standards of care as practiced by reasonably prudent correction officers and/or governments acting in the same or similar circumstances, the Defendants and/or their actual and/or apparent agents, servants and/or employees negligently failed to properly monitor and/or observe their correction officers in order to prevent misuse of lethal force and assaults lacking probable cause; negligently hired employees without the proper training, particularly in the use or disuse of lethal force and the use of non-lethal force to subdue inmates; negligently hired employees who lacked adequate administrative and/or supervisory skills to manage and/or oversee corrections personnel; negligently failed to discharge undertrained, inexperienced and/or reckless employees when Defendants knew or

11

should have known of their propensity for making misuse of lethal force and assaults lacking probable cause; negligently failed to properly hire, train and/or supervise employees to prevent misuse of lethal force and assaults lacking probable cause; and, were otherwise and further negligent.

51. Furthermore, the Defendants were aware, prior to the incident, of CO Warren's incompetence due to his prior bad acts, undertraining, inexperience and/or reckless behavior and failed to properly train, reassign, suspend and/or discharge CO Warren. It is well known that there is a culture within the State Department of Corrections and the corrections officers assigned to ECI of mistreatment and administrative malfeasance. Due to the failure of Defendants in properly hiring, firing and/or supervising CO Warren he encountered the Plaintiff and caused the incident complained of in the pleadings.

52. As a direct and proximate result of the above-described negligence of the Defendants and/or its actual and/or apparent agents, servants and/or employees, the Plaintiff suffered conscious pain and suffering and required medical treatment. Plaintiff was otherwise damaged and injured in the past and foreseeably into the future. Had Defendants not been derelict in their duties to prevent these types of incidents, the Plaintiff would not have suffered said injuries.

53. That each of the damages and injuries sustained by Plaintiff are a direct and proximate result of the aforesaid negligence of each of the Defendants named herein and/or its actual and/or apparent agents, servants and/or employees as aforesaid, without any negligence of the Plaintiff contributing thereto.

WHEREFORE, Plaintiff demands an order and judgment against Defendants, the State of Maryland, Warden Kathleen Green, and Sergeant J.S. awarding damages for physical pain and suffering, emotional pain, mental anguish, inconvenience, attorney's fees, costs, loss of enjoyment

of life, jointly and severally, against Defendants in the amount of five hundred thousand dollars ($1,000,000.00) in compensatory damages and one million dollars ($3,000,000.00) in punitive damages, with interest and costs.

### COUNT FOUR – BATTERY
### Krikstan v. Warren

54. Plaintiff hereby alleges and incorporates by reference the facts and allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55. Defendants engaged in intentional acts of unlawful conduct with Plaintiff such that Plaintiff sustained physical injuries.

56. CO Warren utilized unreasonable, unlawful, and excessive force by, among other things, taking Plaintiff to the ground and punching Plaintiff. These acts occurred while Plaintiff was handcuffed behind his back.

57. Defendants' actions and conduct constituted an intentional and unwanted touching of Plaintiff which was undertaken deliberately and with actual malice to inflict pain and suffering upon Plaintiff.

58. Plaintiff did not consent to CO Warren's physical contact and Plaintiff in no way provoked, contributed to, or in any way presented just or reasonable cause for Defendants' actions.

59. As a result of Defendants conduct and actions, Plaintiff has suffered physical injuries as well as ongoing severe mental anguish.

WHEREFORE, Plaintiff demands an order and judgment against Defendant Warren awarding damages for physical pain and suffering, emotional pain, mental anguish, inconvenience, attorney's fees, costs, loss of enjoyment of life, jointly and severally, against Defendants in the amount of five hundred thousand dollars ($1,000,000.00) in compensatory damages and one million dollars ($3,000,000.00) in punitive damages, with interest and costs.

### COUNT FIVE – VIOLATION OF ARTICLE 16 AND 25 OF THE MARYLAND DECLARATION OF RIGHTS
**Krikstan v. Warren, Quillen, Wilson, Daubach and Green**

60. Plaintiff hereby alleges and incorporates by reference the facts and allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61. CO Warren and CO Quillen's battering and commission of other acts against Plaintiff violated and deprived Plaintiff of his rights guaranteed to him under Articles 16 and 25 of the Maryland Declaration of Rights.

62. As a result of Defendants conduct and actions, Plaintiff has suffered physical injuries as well as ongoing severe mental anguish.

63. WHEREFORE, Plaintiff demands an order and judgment against Defendants Warren, Quillen, Wilson, Daubach, and Green awarding damages for physical pain and suffering, emotional pain, mental anguish, inconvenience, attorney's fees, costs, loss of enjoyment of life, jointly and severally, against Defendants in the amount of five hundred thousand dollars ($1,000,000.00) in compensatory damages and one million dollars ($3,000,000.00) in punitive damages, with interest and costs.

### RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants and award him:

1. An order and judgment against Defendants awarding damages for physical pain and suffering, emotional pain, mental anguish, inconvenience, attorney's fees, costs, loss of enjoyment of life, other non-pecuniary and further relief as the court deems just and proper; and

2. Actual, compensatory damages, prejudgment interest, post-judgement interest and consequential damages against Defendants; and

3. Reasonable attorney's fees and costs incurred in pursuing this action, as provided under 42 U.S.C. §1983 and 42 U.S.C.§1988; and

4. Punitive damages against Defendants; and

5. Any other relief as this Court deems just and appropriate.

### JURY DEMAND

Plaintiff, Keith Krikstan hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

Respectfully submitted,

Joseph B. Chazen, #03154
Paul A. Turkheimer, #08128
Adam Shareef, Esquire #21748
Samuel T. Wolf, #17533
Meyers, Rodbell & Rosenbaum, P.A.
6801 Kenilworth Avenue
Riverdale Park, Maryland 20737
Telephone No.: 301-699-5800
Fax No.: 301-699-0534
jchazen@mrrlaw.net
pturkheimer@mrrlaw.net
ashareef@mrrlaw.net
swolf@mrrlaw.net
*Attorneys for Plaintiff*