IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEITH KRIKSTAN,                          *

    Plaintiff,                           *

v.                                       *          Civil Action No. GLR-24-2001

STATE OF MARYLAND, et al.,               *

    Defendants.                          *

                                     *

***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant State of Maryland's Motion to Dismiss (ECF No. 42), Defendant Neil Daubach's Motion to Dismiss (ECF No. 46), and Defendant Debora Darden's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 56). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant the State's Motion to Dismiss, deny Daubach's Motion to Dismiss, and grant Darden's Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

## I.   BACKGROUND

### A.   __Factual Background__[1]

This action arises out of alleged violations of Plaintiff Keith Krikstan's constitutional right to be free from cruel and unusual punishment. (Am. Compl. ¶ 1, ECF No. 27). At all times relevant to this case, Krikstan was an inmate at Eastern Correctional Institute ("ECI"), a Maryland correctional facility. (Id. ¶ 4). Defendant Debora Darden ("Warden" or "Darden") was the Warden of ECI and an employee of the Maryland Department of Public Safety and Correctional Services ("MDPSCS"). (Id. ¶ 6). Defendants Samuel Warren, David Quillen, Ananias Wilson, and Neil Daubach worked for MDPSCS as Correctional Officers, and Defendant Jermaine Robert Sturgis worked for MDPSCS as a Sergeant. (Id. ¶¶ 7–10). Defendant State of Maryland employed the correctional officers named herein, including the warden and high-ranking officials at ECI, exercising control and exerting influence over their policies and customs. (Id. ¶ 5)

On July 12, 2021, Correctional Officers Warren, Quillen, Wilson, and Daubach were assigned to work at ECI Housing Unit 4. (Id. ¶ 13). That same day, Krikstan reported to his shift on Unit 4 as an Inmate Observation Aide—a position he received due to his excellent disciplinary record. (Id. ¶ 14). Upon entering the housing unit, Krikstan was frisked. (Id. ¶ 15). During the initial frisk, Warren grew frustrated with Krikstan for not properly wearing his face mask as required. (Id. ¶ 15). Krikstan made remarks about this

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 27) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

interaction, which further irritated Warren. (Id. ¶ 16). As a result, Warren instructed Krikstan to enter the property room to undergo a second and more intrusive strip search. (Id. ¶ 17). Daubach and Wilson joined them. (Id. ¶ 18).

Once inside the room, Krikstan made a coarse comment toward the officers. (Id. ¶ 19). Warren then instructed Krikstan to turn around and repeat his earlier remark. (Id.). After doing so, Warren informed Krikstan that he would no longer be permitted to serve as an Inmate Observation Aide and stated that they would begin the monitored strip search. (Id. ¶¶ 19, 20). This procedure required Krikstan to be handcuffed and escorted to a cell where officers would remove his clothing. (Id.). With Krikstan's hands cuffed behind his back, shoes off, and pants lowered, Warren walked Krikstan to the property room door. (Id. ¶ 21). As they approached the doorway, Krikstan pulled away from Warren, breaking his grip on Krikstan's arm. (Id.).

In response, Warren threw Krikstan to the floor. (Id. ¶ 23). While handcuffed and lying on his side, Warren punched Krikstan five or six times in the face and head, resulting in visible signs of injury and bleeding. (Id. ¶¶ 23, 25). Wilson and Daubach observed the assault but did not intervene. (Id. ¶ 24). After hearing about this incident, Quillen arrived on the scene and proceeded to record Krikstan's subsequent medical evaluation and the monitored strip search. (Id. ¶ 26). During his medical evaluation, Krikstan explained that Warren assaulted him. (Id.).

After filming, Quillen showed the video to various officers, including Correctional Officers Warren, Wilson, Daubach, and Sergeant Sturgis. (Id. ¶ 27). While viewing the

footage, Sturgis commented that the video should be deleted because of what it depicted. (Id.). Warren agreed. (Id.).

Over the next few hours, the officers determined that the use of force was not justified and coordinated a plan to cover up the incident by deleting the video and submitting false written and verbal statements. (Id. ¶¶ 28–29). Ultimately, Correctional Officers Warren, Quillen, Wilson and Daubach pled guilty to criminal charges arising from the above-described conduct. (Id. ¶ 30).

## B.    Procedural History

On July 10, 2024, Krikstan initiated this action against Defendants State of Maryland, Kathleen Green (Warden), Samuel Warren (Correctional Officer), David Quillen (Correctional Officer), Ananias Wilson (Correctional Officer), Neil Daubach (Correctional Officer), and J.S. (Sergeant). (Compl. at 1–2, ECF No. 1).[2] On March 3, 2025, Daubach filed a Motion to stay proceedings pending the resolution of the criminal case arising out of this matter (Mem. L. Supp. Mot. Stay at 1, ECF No. 24-1), which the Court granted on April 10, 2025 (ECF No. 37). On October 16, 2025, Daubach was sentenced in United States v. Neil Daubach, et al., No. MJM-24-0363 (Jt. Status Rep. ¶ 1, ECF No. 40), and the stay was lifted on October 20, 2025 (ECF No. 41).

Krikstan amended his Complaint on March 19, 2025, replacing Kathleen Green with Debora Darden as Warden, and adding the full name of Sergeant Jermaine Robert Sturgis. (Am. Compl. at 1–2). He asserts five counts against Defendants for use of excessive force

---

[2] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

in violation of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 (Count One), supervisory liability in violation of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 (Count Two), negligent supervision and retention (Count Three), battery (Count Four), and cruel and unusual punishment under the Maryland Declaration of Rights, Articles 16 and 25 (Count Five). (Id. at 8–14). Krikstan seeks compensatory and punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs associated with this litigation. (Id. at 15).

On November 19, 2025, the State of Maryland filed a Motion to Dismiss. (ECF No. 42). Daubach filed a Motion to Dismiss on December 3, 2024. (ECF No. 46). On December 17, 2025, Krikstan filed his Opposition to both Motions. (ECF Nos. 48, 49). Daubach filed a Reply on December 31, 2025. (ECF No. 50). To date, the State of Maryland has not filed a Reply.

On February 5 and 19, 2026, the Amended Complaint was served on Defendants Darden and Sturgis, respectively. (ECF Nos. 52, 53). Darden filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment on April 13, 2026. (ECF No. 56). On May 11, 2026, Krikstan filed an Opposition. (ECF No. 61). Darden filed a Reply on May 26, 2026. (ECF No. 66).[3]

---

[3] To date, the Court has no record that Defendants Samuel Warren, David Quillen, Ananias Wilson, or Jermaine Robert Sturgis have answered Plaintiff Keith Krikstan's Amended Complaint. Therefore, the Court will direct Krikstan to file a Motion for Clerk's Entry of Default as to these Defendants.

## II.    DISCUSSION

### A.    <u>Standards of Review</u>

### 1.    Conversion

Defendant Warden Darden styles her Motion as a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. (ECF No. 56). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. <u>See</u> <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd sub nom</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice; and (2) a reasonable opportunity for discovery. <u>Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448–49 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To sufficiently raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party,"

7

such as "complex factual questions about intent and motive." Id. at 247 (quoting 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998) (internal quotation marks omitted)).

Here, the Court finds that the second requirement for conversion, a reasonable opportunity for discovery, is not satisfied. While Darden placed Krikstan on notice that the Court might resolve her Motion under Rule 56 by styling the Motion in the alternative for summary judgment (see generally, Mot. Dismiss or, in the alt., Mot. Summ. J. ["Darden Mot."], ECF No. 56-1) and submitting materials outside the pleadings for the Court's consideration (see ECF Nos. 56-3 through 56-5), Krikstan argues that he would need discovery from the State to support his opposition (Opp'n Darden Mot. at 6–7, ECF No. 61). As such, the Court finds the second conversion requirement unmet and will decline to convert Darden's Motion into one for summary judgment. See Carey v. Throwe, No. GLR-18-162, 2019 WL 414873, at *3 (D.Md. Jan. 31, 2019), aff'd, 957 F.3d 468 (4th Cir. 2020) (declining to convert defendants' motion to one for summary judgment when plaintiff filed Rule 56(d) affidavit requesting discovery). Accordingly, the Court will construe the Motion (ECF No. 56) as a motion to dismiss and will not consider materials outside of the pleadings.

### 2. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction by showing the existence of either a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. A plaintiff may establish federal question jurisdiction by asserting a claim that arises from a federal statute or from

8

the U.S. Constitution. 28 U.S.C. §§ 1331, 1332 To show that the claim arises on one of these bases, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." AES Sparrows Point LNG, LLC v. Smith, 470 F.Supp.2d 586, 592 (D.Md. 2007) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). However, when a party challenges subject-matter jurisdiction, the Court may consider "evidence outside the pleadings" to resolve the challenge. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.

### 3.  Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City

of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom, Goss v. Bank of Am., Na., 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994; Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"),

10

or legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678 (quoting

Twombly, 550 U.S. at 555).

**B.    Analysis**

    **1.    State of Maryland's Motion to Dismiss**

The State of Maryland moves to dismiss Krikstan's Amended Complaint under Rule

12(b)(1) on the grounds that the Eleventh Amendment bars all claims against the State and

against Defendants in their official capacities. (State Mot. Dismiss at 5–9, ECF No. 42-2).[4]

Krikstan concedes the same in his Opposition, noting that while the State's argument is

consistent with the existing state of the law, he reserves the right to challenge the status

quo on appeal. (See Opp'n State Mot. Dismiss at 1–2, ECF No. 48). Accordingly, the Court

will grant the State's Motion to the extent that it seeks dismissal of all claims against the

State and the Individual Defendants in their official capacities.

    **2.    Correctional Officer Daubach's Motion to Dismiss**

Krikstan asserts a single count against Daubach for violating his right to be free

from cruel and unusual punishment under Articles 16 and 25 of the Maryland Declaration

of Rights (Count Five). (Am. Compl. at 14). Daubach argues that this Court should dismiss

Count Five because Krikstan fails to state a claim against him in his individual capacity.

(Def.'s Mot. Dismiss ["Daubach Mot."] at 4–9, ECF No. 46-1). For the reasons discussed

below, the Court will deny Daubach's Motion.

---

[4] The State of Maryland also argues that Krikstan's State law claims against the Defendants are barred under the Maryland Tort Claims Act. (State Mot. Dismiss at 7–9, ECF No. 42-2). The Court will address this argument in the sections that follow.

Articles 16 and 25 of the Maryland Declaration of Rights are construed in pari materia with the Eighth Amendment. Wallace v. Moyer, No. CCB-17-3718, 2020 WL 1506343, at *9 (D.Md. Mar. 30, 2020). The Eighth Amendment protects inmates from cruel and unusual punishment by prohibiting the use of excessive force and deliberate indifference to an inmate's medical or safety needs. See Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To state a cognizable claim for deliberate indifference, Krikstan must allege that: (1) he sustained a significant physical or emotional injury as a result of the challenged conditions; and (2) a prison official knew of and disregarded an excessive risk to his health or safety. Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) (quoting Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003)).

As to the first element, there is no real dispute that Krikstan suffered serious physical injuries as a result of Warren's attack. (See Am. Compl. ¶¶ 23, 25 (noting that Krikstan displayed visible signs of injury and bleeding); Daubach Mot. at 5–6). Thus, the Court finds Krikstan's injury sufficient to meet the first element.

With respect to the second element, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." Brown, 612 F.3d at 723 (quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002)). Here, the Court can infer that Daubach knew Krikstan faced serious danger because the Amended Complaint alleges that Daubach observed as Warren repeatedly punched Krikstan in his face and head while Krikstan remained defenseless on the floor, with his hands cuffed behind his back. (Am. Compl. ¶¶ 21–24). Moreover, given Daubach's proximity to Krikstan during the attack, the Court can also infer that Daubach

12

could have interfered to avert the danger but chose not to do so. (Id. ¶¶ 18, 24 (explaining that Daubach was inside the property room during the attack and observed the assault but did not intervene)). At this stage of the litigation, the Court finds these allegations sufficient to support a claim of deliberate indifference under Articles 16 and 25 of the Maryland Declaration of Rights. See Brown, 612 F.3d at 723 (finding that plaintiff's allegation that corrections officer observed altercation and failed to respond adequate to support claim of deliberate indifference).

To avoid this result, Daubach next argues that he is immune from liability under the Maryland Tort Claims Act ("MTCA" or "Act") because Krikstan fails to allege that he acted with malice or gross negligence. (Daubach Mot. at 7–9); Howe v. Md. Dep't of Pub. Safety & Corr. Servs., No. GLR-24-1896, 2024 WL 4825782, at *5 (D.Md. Nov. 19, 2024); Andrews v. Md. Dep't of Pub. Safety & Corr. Servs., No. JMC-23 -172, 2024 WL 520038, at *9 (D.Md. Feb. 9, 2024). The Court disagrees.

The MTCA confers immunity against state common law tort claims and violations of state constitutional rights, such as those at issue here. See Francis v. Maryland, No. ELH-21-1365, 2023 WL 2456553, at *23 (D.Md. Mar. 10, 2023). Specifically, the Act provides in relevant part that "State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). A plaintiff can overcome a defendant's MTCA immunity, however, by showing that the defendant acted with malice or gross negligence. See Nero v. Mosby, 890 F.3d 106, 124 (4th Cir. 2018).

13

Maryland courts have consistently defined "malice" as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Barbre v. Pope, 935 A.2d 699, 714 (Md. 2007) (citation modified). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." Id. at 717.

Here, the Amended Complaint alleges that Daubach acted with gross negligence towards Krikstan's safety and wellbeing. As a Corrections Officer, Daubach had a duty under the Eighth Amendment to protect Krikstan from violence at the hands of other prisoners or corrections staff. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). As such, his decision not to interfere as he watched Warren beat Krikstan, who was lying on his side on the floor in handcuffs, "implies a thoughtless disregard of the consequences" sufficient to raise a plausible inference of gross negligence. Barbre, 935 A.2d at 717; (see Am. Compl. ¶¶ 22–24). On these facts, the Court finds that the MTCA does not bar Krikstan's claim against Daubach. Accordingly, the Court will deny his Motion to Dismiss and Count Five shall proceed against Daubach in his personal capacity.

### 3.    Warden Darden's Motion to Dismiss

Krikstan asserts three claims against Warden Darden for supervisory liability under Section 1983 (Count Two), negligent supervision and retention (Count Three), and cruel and unusual punishment under Articles 16 and 25 of the Maryland Declaration of Rights (Count Five). (Am. Compl. at 10–12, 14). The Warden argues that these claims should be dismissed because: (1) Krikstan failed to exhaust his administrative remedies; (2) Krikstan

14

fails to state a claim for supervisory liability under Section 1983; and (3) Darden is entitled to immunity under the MTCA. (Darden Mot. at 9–19). At bottom, the Court will grant Darden's Motion to Dismiss Counts Two, Three, and Five.

### a. Exhaustion of Administrative Remedies

Darden first asserts that Krikstan is barred from bringing his Section 1983 claims because he failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (Id. at 9–11). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Administrative remedies are deemed unavailable, however, when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 578 U.S. 632, 644 (2016).

Here, Krikstan alleges that Defendants thwarted his ability to pursue his administrative remedies by destroying evidence and conspiring to cover up their misconduct. (Am. Compl. ¶ 29; Opp'n Darden Mot. at 6–7). To that end, he requests that the Court defer the issue of administrative exhaustion until the completion of discovery as evidence concerning the Defendants' prohibitive conduct is within the State's possession. (Id. at 7). Because there appears to be a genuine dispute as to whether Defendants' misrepresentations rendered the administrative remedy process unavailable to Krikstan, "the Court finds that it would be premature and improper to assess the merits of [Darden's] administrative exhaustion defense without first providing a reasonable opportunity for

15

discovery." Gilliam v. Dep't of Pub. Safety & Corr. Servs., No. MJM-23-1047, 2024 WL 5186706, at \*7 (D.Md. Dec. 20, 2024).

### b. Supervisory Liability under Section 1983

Even if Krikstan properly exhausted his federal claims, Darden argues that his Section 1983 claim for supervisory liability would still fail because Krikstan does not allege sufficient facts to state a claim. (Darden Mot. at 11–12). The Court agrees, for the reasons discussed below, and will dismiss Count Two.

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under Section 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd., 31 F.4th 238, 257 (4th Cir. 2022) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

16

Here, the Amended Complaint fails to plausibly allege any of these three elements. Rather, in a conclusory manner, Krikstan restates each element without identifying any prior incidents involving Warren, any prior grievances related to the excessive use of force involving Warren, or any disciplinary findings that would have put the Warden on notice of any pervasive and unreasonable risk of harm to Krikstan, or any other inmate. (See Am. Compl. at 10–11; Darden Mot. at 12). Under federal pleading standards, such "naked assertions devoid of further factual enhancement[s]" are insufficient to state a claim. Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted); Cf. McCarter v. Univ. of N.C.at Chapel Hill, No. 1:20-CV-1050, 2021 WL 4482983, at *14 (M.D.N.C. Sept. 30, 2021) (finding plaintiff adequately alleged supervisory liability because plaintiff alleged supervisor was informed by a third party of subordinates' ongoing racial harassment toward plaintiff, yet responded by taking no action whatsoever against subordinates). Therefore, the Court finds that Krikstan fails to plausibly allege his Section 1983 claim of supervisory liability and Count Two will be dismissed with prejudice.[5]

### c.    Statutory Immunity

As to the remaining State law counts against Darden (Counts Three and Five), the Warden argues that she is immune under the MTCA. (Darden Mot. at 17–19). At bottom, the Court agrees with Darden and will dismiss Counts Three and Five.

---

[5] Because Krikstan fails to state any violation of a federal statutory or constitutional right against Darden, the Court need not address Darden's qualified immunity argument. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (where no constitutional violation is shown, there is no requirement for further inquiry regarding qualified immunity).

As discussed earlier, under the MTCA, State personnel are afforded statutory immunity for "intentional torts and constitutional torts as long as they were committed within the scope of state employment and without malice or gross negligence." Lee v. Cline, 863 A.2d 297, 304 (Md. 2004).

Turning first to Krikstan's negligent supervision claim (Count Three), the Court finds that this claim is barred because the MTCA confers state personnel "with qualified immunity from negligence actions" such as this. McDaniel v. Maryland, No. RDB-10-189, 2010 WL 3260007, at *10 (D.Md. Aug. 18, 2010) (summarily dismissing negligence claim against correctional officers under MTCA because a plaintiff may only maintain claims against state personnel that are based upon allegations of malice or gross negligence).

With respect to Krikstan's State constitutional claim for violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Five), a plaintiff can overcome a defendant's MTCA immunity by showing that the defendant acted with malice or gross negligence. See Thomas v. Maryland, No. GJH-17-1739, 2017 WL 6547733, at *9 (D.Md. Dec. 20, 2017) (dismissing claims against state officials under MTCA because complaint contained no allegations of malice or gross negligence). But to do so, a plaintiff must allege with some particularity those facts that make defendant's conduct malicious or grossly negligent. See Cooper v. Doyle, No. DKC-22-52, 2022 WL 16923857, at *3 (D.Md. Nov. 14, 2022) (citing Elliott v. Kupferman, 473 A.2d 960, 969 (Md.Ct.Spec.App. 1984)).

Here, as Darden aptly points out, Krikstan's Amended Complaint fails to identify any specific conduct that shows the Warden acted with the requisite carelessness or intent. (Reply Supp. Darden Mot. at 9–10, ECF No. 66; see Am. Compl. ¶¶ 60–62). In anticipation

of this argument, Krikstan states that "development of the record through discovery and trial will show whether [he] ultimately can prove that Darden's conduct was grossly negligent." (Opp'n Darden Mot. at 11). While this may be true, Krikstan has not alleged any facts at this stage that plausibly permit an inference of gross negligence or malice on the part of the Warden that would justify discovery. Put simply, Krikstan's vague assertions are insufficient, and the Court will deny Krikstan's request for discovery. See, e.g., Hamel v. Phelan, No. BAH-24-2134, 2026 WL 84391, at *6 (D.Md. Jan. 12, 2026) (denying request for discovery because plaintiff did not allege sufficient facts that, if taken as true, would show immunity did not apply). Accordingly, the Court finds that Darden is entitled to immunity under the MTCA and will dismiss Counts Three and Five without prejudice. See Howe v. Md. Dep't of Pub. Safety & Corr. Servs., No. GLR-24-1896, 2024 WL 4825782, at *6 (D.Md. Nov. 19, 2024) (finding that defendant prison officials were entitled to MTCA immunity against plaintiff's claim under the Maryland Declaration of Rights, Articles 16 and 25 because plaintiff failed to allege prison officials acted with reckless disregard or malice).

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the State's Motion to Dismiss (ECF No. 42), deny Daubach's Motion to Dismiss (ECF No. 46), and grant Darden's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 56), which the Court construes as a Motion to Dismiss. A separate Order follows.

Entered this 15th day of July, 2026.

/s/
_____

George L. Russell, III
Chief United States District Judge
